THE STATE OF OHIO, APPELLEE, *v.* STAHL, APPELLANT.

[Cite as *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482.]

(No. 2005–0773—Submitted March 14, 2006—Decided November 8, 2006.)

O'DONNELL, J.

{¶ 1} James G. Stahl appeals from a decision of the Ninth District Court of Appeals that held that statements to a nurse practitioner during a medical examination at a hospital DOVE unit by a rape victim identifying the accused were nontestimonial pursuant to *Crawford v. Washington* (2004), 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177, and therefore admissible at trial. Upon review, we agree and affirm that judgment.

I

{¶ 2} On December 22, 2003, in an effort to help her boyfriend regain his lost employment, Ann Mazurek allegedly went to the office of his former boss, James Stahl. The next day, she made a statement to Officer Amy Ellis of the Richfield Police Department, alleging that during her visit, Stahl had orally raped her. After taking a detailed statement from Mazurek, Ellis transported her to the Developing Options for Violent Emergencies ("DOVE") unit at St. Thomas Hospital in Akron, Ohio. This hospital unit specializes in health-care services for victims of sexual assault and domestic disturbances and provides essentially the same services as a traditional emergency room but in a more efficient and timely fashion. The unit's specialization allows it to better handle these victims because it is not consumed with other injuries that are presented in typical emergency rooms on a daily basis.

{¶ 3} Prior to her examination, Mazurek signed a consent form authorizing the examination and agreeing to release any evidence, information, clothing, and photographs for prosecution of the case. The form, in its entirety, states:

"DOVE Program CONSENT FOR FORENSIC
EXAM AND RELEASE OF EVIDENCE

{¶ 4} "I voluntarily consent to this forensic examination and collection of evidence. I have received a detailed description of the steps of the process and understand that I may withdraw my consent to any or all parts of this examination at any time. I authorize the release of evidence, information (including protected health information), clothing, colposcope photos, and photography documentation of injuries to a law enforcement agency for use only in the investigation and prosecution of this crime. I understand that if release of the Sexual Assault Evidence Collection Kit is not authorized, the kit will be kept at the SANE [Sexual Assault Nurse Examiner] Unit for sixty days and then destroyed."

{¶ 5} Jenifer Markowitz, a nurse practitioner and coordinator for victim services at the DOVE program, began the examination by taking a detailed

medical and incident history from Mazurek and documented the incident in her report as follows:

{¶ 6} "Ann states she went to talk with her boyfriend's boss about giving him his job back. She states she was in his office talking with him and he came around the desk and put his arms around her and patted her back; told her 'Let's go take a walk, you'll feel better.' She states she protested, but he grabbed his coat and Ann states she thought they were going outside. She states he whispered to her, 'I would do anything for you. I'll always help you.' She states he walked her out of his office and downstairs. She states she told him she didn't need a walk. She states he took her into an office and started to hug her, telling her, 'I'll always help you guys out. You do something to me. I don't know what it is about you.' She states he kept hugging her, trying to kiss her mouth. She states she told him no, but he got the door closed and turned the lights down. She states he pushed her into a corner and kept kissing her mouth. She states he told her, 'I helped you guys out, you're going to do something for me.' She states he moved his hands around her head, then moved one hand to her neck and pushed her down onto her knees. Ann states she hit her head on a piece of furniture when he pushed her down. She states he held her down, unzipped his pants and took his penis out. She states he tried to penetrate her mouth and was able to get it in after rubbing himself in her face and manually masturbating himself. She states he straddled her shoulders and neck and continued to orally penetrate her until he ejaculated in her mouth, on her face and in her hair. She states he handed her a tissue to clean off with then let her leave without incident."

{¶ 7} Officer Ellis, who had transported Mazurek to the DOVE unit following her statement to police, remained in the examination room while Markowitz took the incident history but did not participate in taking the history or administering the physical examination.

{¶ 8} After obtaining Mazurek's medical and incident history, Markowitz performed a physical examination that included the use of a colposcope to photograph Mazurek's mouth, and also collected materials using an approved forensic evidence-collection kit (see Ohio Adm.Code 109:7–1–01), including nail scrapings, oral swabbings, and material retrieved with dental floss. Additionally, Markowitz used ultraviolet lighting to identify any bodily fluids still present. Markowitz also collected a napkin from Mazurek's coat pocket that Mazurek had used to wipe her face after the incident. Markowitz then tried to ascertain whether Mazurek would be in any danger upon discharge and informed her about the importance of follow-up care.

{¶ 9} According to defense counsel, Mazurek died about five weeks later on February 1, 2004, from an unrelated seizure disorder, without having given formal testimony. Nonetheless, a Summit County grand jury indicted Stahl on

one count of rape and one count of kidnapping. In preparing for trial, the prosecutor filed a notice of intent to use medical records, which prompted Stahl to move for an order in limine to exclude Mazurek's statements to Markowitz during the DOVE unit examination. The trial court conducted a hearing on the motion in limine, at which Stahl argued that introduction of Mazurek's statement would violate his Sixth Amendment confrontation rights as set forth in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Nurse Markowitz testified that Mazurek alleged that she had been raped by Stahl. Additionally, Markowitz testified about the DOVE unit and its relationship to law enforcement. Following that hearing, the trial court found Mazurek's statement to be testimonial and therefore inadmissible in accordance with *Crawford.* Although the court stated that it had granted a motion in limine, it is clear from the hearing and the order that the court treated the motion as a motion to suppress. The state appealed pursuant to R.C. 2945.67 and Crim.R. 12(K). The Ninth District Court of Appeals reversed that determination with respect to the DOVE unit statement and held that Mazurek had made the statement for purposes of diagnosis and treatment and that it was therefore nontestimonial. *State v. Stahl,* 2005-Ohio-1137, ¶ 21. Stahl appealed to this court, and we granted discretionary review.

{¶ 10} The issue in this case concerns whether Mazurek's statement to Markowitz at the DOVE unit identifying Stahl as her assailant is testimonial in nature in accordance with *Crawford v. Washington* and therefore inadmissible pursuant to the Sixth Amendment to the United States Constitution or whether it is nontestimonial and therefore admissible against Stahl.

{¶ 11} Stahl advances several arguments contending that Mazurek's statement is testimonial and therefore inadmissible at trial. First, he argues that the DOVE unit is an arm of the prosecution because it retains evidence for prosecutorial purposes and receives funding from the state Attorney General's office. Second, he claims that because she signed a consent form prior to the examination, Mazurek reasonably expected her statements to Markowitz to be used by the prosecution. Third, he contends that a reasonable person in Mazurek's position would believe that her statement would be used in a future prosecution.

{¶ 12} On the other hand, the state urges that Mazurek made the statement in connection with her medical examination for purposes of medical diagnosis and therefore had no reason to believe that it would be used in a later prosecution of the crime. It also contends that even if the DOVE unit does provide a service for the prosecution, its primary purpose is diagnosis and treatment of rape victims, and therefore Mazurek's statement is nontestimonial according to *Crawford.*

## II

{¶ 13} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

{¶ 14} In *Crawford*, the defendant had stabbed an assailant who, he claimed, had tried to rape his wife. *Crawford*, 541 U.S. at 38, 124 S.Ct. 1354, 158 L.Ed.2d 177. The defendant's wife, when questioned by police, provided an account of the stabbing that had been recorded on audio tape. The prosecution moved to introduce the wife's account of the incident in lieu of her live testimony at trial because the marital privilege barred her from testifying without her husband's consent. Id. at 40, 124 S.Ct. 1354, 158 L.Ed.2d 177. The trial court permitted the testimony, relying on the Supreme Court's earlier decision in *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, and a jury convicted Crawford of assault. Id. at 41, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 15} On appeal, the circuit court affirmed the conviction, but the United States Supreme Court reversed both courts and held her statement inadmissible. *Crawford*, 541 U.S. at 69, 124 S.Ct. 1354, 158 L.Ed.2d 177. After conducting an exhaustive historical analysis of the Confrontation Clause, the court reasoned that the Confrontation Clause applies only to "witnesses," meaning those who " 'bear testimony' " against the accused. " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " Id. at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting 1 N. Webster, American Dictionary of the English Language (1828). Thus, the court ruled that only testimonial statements implicate the Confrontation Clause.

{¶ 16} The court held: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Therefore, because Crawford had no opportunity to cross-examine the declarant, the court held that the Confrontation Clause precluded introduction of the wife's recorded statement that had been given to police authorities in anticipation of prosecution. Id.

{¶ 17} Upon review of the facts in *Crawford*, we conclude that it does not dispose of this matter. *Crawford* involved the admissibility of direct police interrogations without an ability to cross-examine. *Crawford*, 541 U.S. at 38, 124 S.Ct. 1354, 158 L.Ed.2d 177. In *Crawford*, the police conducted two formal custodial interrogations following the administration of *Miranda* warnings. Id. at 65, 124 S.Ct. 1354, 158 L.Ed.2d 177. There, the state sought to introduce a statement made by a wife to a *police officer* during interrogation in an effort to gather evidence of her husband's stabbing of her assailant. Police interrogations, the court reasoned, "fall squarely within" the class of statements the Framers intended the clause to exclude. Id. at 53, 124 S.Ct. 1354, 158 L.Ed.2d 177.

These statements are "testimonial under even a narrow standard." Id. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 18} In sharp contrast with the prosecution in *Crawford,* the state in the instant case seeks to introduce a statement made by a victim to a *medical professional* during an emergency-room examination identifying a person who allegedly raped her. Though made in the presence of a police officer, the identification elicited during the medical examination came to a medical professional in the ordinary course of conducting a medical examination, and no *Miranda* warnings preceded its delivery. Unlike *Crawford,* this case does not involve police interrogation. The court in *Crawford* concluded that the term "testimonial statement" applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Mazurek's statements to Markowitz do not fall within any of these specific examples, and we decline to expand that list to include statements made to a medical professional for purposes of receiving medical treatment or diagnosis.

{¶ 19} The court in *Crawford* expressly declined to define "testimonial," but it did give three examples of "formulations" for "testimonial statements" that historical analysis supports. 541 U.S. at 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177. The first deems testimonial all " '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' " Id. at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting Crawford's brief. The second includes all " 'extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' " Id. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting *White v. Illinois* (1992), 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (Thomas, J., concurring). And the third includes " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " Id., quoting the brief of amicus curiae National Association of Defense Lawyers.

{¶ 20} Stahl acknowledges these formulations and urges us to adopt an expanded version of the third. He argues that "testimonial statement" means (1) a statement made under circumstances that would lead an objective witness to reasonably expect that the statement would be available for use at a later trial or (2) a statement directed toward prosecutorial agents who intend to use it with an eye toward trial. Id. Thus, Stahl urges us to consider not only Mazurek's state of mind when giving the statement but both Markowitz's and Ellis's motivations in conducting and facilitating the interview and the medical examination. Stahl

argues that Mazurek, in view of the consent form and the role of Ellis in setting up the interview, reasonably believed that the statement would be used at the trial in the matter. He further argues—and there is little doubt—that Markowitz and Ellis intended to use the DOVE unit examination results to further their investigation.

{¶ 21} Stahl's modified *Crawford* formulation, however, raises a significant concern. *Crawford* narrowed and refined the right to confrontation by focusing on its derivation and held that the right does not extend to nontestimonial hearsay. Thus, we should not allow our definition of "testimonial" to trample other forms of hearsay to which the right of confrontation does not apply. A definition of "testimonial" for Sixth Amendment purposes should therefore focus on the principal evil the clause meant to remedy: "the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 U.S. at 50, 124 S.Ct. 1354, 158 L.Ed.2d 177. Stahl's modified third formulation, which requires review of the motivations of the declarant and the questioner, would at times preclude forms of hearsay that the Framers did not intend to preclude.

{¶ 22} The United States Supreme Court has provided additional guidance regarding testimonial statements in two recent cases, decided together, dealing with the excited-utterance exception to the hearsay rule, *Davis v. Washington* and *Hammon v. Indiana* (2006), —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224. Both cases instruct that a court should view statements *objectively* when determining whether they implicate Confrontation Clause protection pursuant to *Crawford*.

{¶ 23} In *Davis*, the court held that a 911 telephone call made to seek protection from immediate danger did not constitute a testimonial statement for Sixth Amendment purposes. In contrast, the court in *Hammon* held as testimonial a victim's statement to a police officer after the officer arrived at the home in response to a report of domestic disturbance. In its analysis, the court explained that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the *primary purpose* of the interrogation is to enable police assistance to meet an ongoing emergency." (Emphasis added.) —— U.S. ——, 126 S.Ct. at 2273, 165 L.Ed.2d 224. Conversely, the court stated, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the *primary purpose* of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (Emphasis added.) Id., —— U.S. at ——, 126 S.Ct. at 2273–2274, 165 L.Ed.2d 224. With respect to *Davis*, the court reasoned that "the nature of what was asked and answered [during the 911 call] * * *, again viewed objectively, was such that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to

learn (as in *Crawford*) what had happened in the past." (Emphasis sic.) Id. at ——, 126 S.Ct. at 2276, 165 L.Ed.2d 224. Moreover, the call "was plainly a call for help against bona fide physical threat" and involved "frantic answers" given "in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." Id. at ——, 126 S.Ct. at 2276, 2277, 165 L.Ed.2d 224.

{¶ 24} Unlike the officers in *Davis*, the interrogating police officer in *Hammon* elicited the victim's statements at the scene *following* the alleged crime. At the time of the interrogation, any emergency had ceased, and "[o]bjectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime—which is, of course, precisely what the officer *should* have done." (Emphasis sic.) Id. at ——, 126 S.Ct. at 2278, 165 L.Ed.2d 224. The court also noted the similarity between *Crawford* and *Hammon*, stating, "It is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct * * *." Id.

{¶ 25} *Davis* and *Hammon* are factually distinguishable from this case. They involve statements made to law-enforcement officers, while the statement at issue here covers one made to a medical professional at a medical facility for the *primary* purpose of receiving proper medical treatment and not investigating past events related to criminal prosecution. It is true that the DOVE unit gathers forensic evidence for potential criminal prosecution, but its primary purpose is to render medical attention to its patients. Furthermore, the definition of "testimonial" in *Davis* and *Hammon* involves the excited-utterance exception to the hearsay evidence rule as well as other statements made during—and in response to—an emergency, and we are not confronted with a claim of excited utterance in this case.

{¶ 26} In *State v. Vaught* (2004), 268 Neb. 316, 682 N.W.2d 284, the court faced a similar *Crawford* issue in a trial for sexual assault of a minor where the prosecution, over objection, introduced the child's identification of the defendant made during an examination by an emergency-room physician following a suspected assault. Id. at 316, 682 N.W.2d 284. The defendant appealed the conviction, arguing that the hearsay violated his confrontation rights under the Sixth Amendment. Id. at 317, 682 N.W.2d 284.

{¶ 27} The court there held the identification statements nontestimonial and reasoned that "[t]here was no indication of a purpose to develop *testimony for trial*, nor was there an indication of government involvement in the initiation or course of the examination." (Emphasis added.) Id. at 326, 682 N.W.2d 284. Moreover, the physician obtained both the identification and history for valid medical purposes. These medical justifications mirror those that Markowitz offered in the present case. First, the treating physician in *Vaught* believed that

it was " 'important for a medical professional in the situation he was in to obtain a thorough history regarding the causation and nature of the injury.' " Id. at 319, 682 N.W.2d 284, quoting *State v. Vaught* (2003), 12 Neb.App. 306, 310, 672 N.W.2d 262. The physician further testified that he needed the perpetrator's identity " 'both so that he does not release a patient into the care of a perpetrator and for purposes of treating the patient's mental well-being.' " Id., quoting 12 Neb.App. at 310–311, 672 N.W.2d 262. The court held that admission of the statements did not violate the defendant's confrontation rights pursuant to *Crawford*. Id. at 327–328, 682 N.W.2d 284.

{¶ 28} The court in *Vaught* reached its decision without adopting a definition of "testimonial" under the Sixth Amendment. 268 Neb. at 325–326, 682 N.W.2d 284. The court reasoned, however, that under any of the definitions, including the broadest "reasonable witness" standard, the statements were nontestimonial because the victim made the statements—and the doctor elicited the statements—primarily for the purposes of medical diagnosis and treatment. Id.

{¶ 29} The Colorado Supreme Court confronted the same issue in a matter involving a child's statements to a doctor following a sexual assault. *People v. Vigil* (Colo.2006), 127 P.3d 916. In applying the third *Crawford* formulation, the court held that " 'a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime.' " Id. at 925, quoting *United States v. Summers* (C.A.10, 2005), 414 F.3d 1287, 1302. In that case, the police did not conduct the examination, and the doctor did not perform the examination at the police department. Id. From this, the court concluded that "from the perspective of an objective witness in the child's position, it would be reasonable to assume that this examination was only for the purpose of medical diagnosis." Id. at 926. The court therefore deemed the statement nontestimonial pursuant to *Crawford*.

{¶ 30} The Supreme Court of Minnesota, in reinstating a defendant's conviction for sexually abusing a child, adopted a broader definition of "testimonial" in *State v. Bobadilla* (Minn.2006), 709 N.W.2d 243, where a social worker took a child's account of the alleged abuse in a risk-assessment interview. The court held that a declarant makes a testimonial statement if the "declarant or government questioner is acting, to a substantial degree, in order to produce a statement for trial." Id. at 252. This analysis requires a trial court to look at the entirety of the questioning. But even in *Bobadilla*, the court reasoned that "[i]f part of the purpose of this interview was to produce a statement for use at a future trial, such a purpose was at best incidental to the main purpose: assessing and responding to imminent risks to [the victim's] health and welfare." Id. at 255. The court concluded that the interview " 'represent[ed] a response to a call for assistance and preliminary determination of "what happened" and whether there

was immediate danger, rather than an effort to gather evidence for a future trial.' " Id., quoting *State v. Wright* (Minn.2005), 701 N.W.2d 802, 813–814. The court held that the child's statements during the risk-assessment interview were nontestimonial.

{¶ 31} Unlike *Vigil, Bobadilla* further broadens *Crawford*'s third formulation by accounting for the expectations of the questioner and of the declarant. The prevailing view among jurisdictions defining "testimonial" statements, however, does not account for the expectations of the questioner, except where the expectations could affect the reasonable expectations of a witness. See, e.g., *Bray v. Commonwealth* (Ky.2005), 177 S.W.3d 741 (applying third *Crawford* formulation and holding a declarant's spontaneous utterances to a sibling to be nontestimonial); *State v. Mizenko* (2006), 330 Mont. 299, 127 P.3d 458 (applying the third *Crawford* formulation and holding an excited utterance during a 911 call to be nontestimonial).

{¶ 32} Federal appellate decisions also apply the third *Crawford* formulation, focusing on the reasonable expectations of the declarant at the time of the statement. The First Circuit, in *Horton v. Allen* (C.A.1, 2004), 370 F.3d 75, 84, held as nontestimonial a declarant's statements during a private conversation because the declarant "did not make the statements under circumstances in which an objective person would 'reasonably believe that the statement would be available for use at a later trial,' " quoting *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. The court in *Horton,* like the majority of state court decisions discussed above, focused on the expectation of the declarant in finding the statement nontestimonial.

{¶ 33} Similarly, the Second Circuit held in *United States v. Saget* (C.A.2, 2004), 377 F.3d 223, that where a declarant had engaged in conversations with a confidential informant regarding a gunrunning scheme, the statements to the informant were nontestimonial despite the fact that the informant had performed an inherently prosecutorial or investigative function at the direction of law enforcement. Thus, the court held that the informant's motives did not affect the expectations of the declarant in making the statement that incriminated the defendant.

{¶ 34} In reaching this decision, the court in *Saget* focused on *Crawford*'s explanation that the three separate formulations " 'all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it.' " Id. at 229, quoting *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. This, *Saget* reasoned, "suggests that the Court would use the reasonable expectation of the declarant as the anchor of a more concrete definition of testimony." Id. The court dismissed the fact that the informant had served an obvious prosecutorial function, because a reasonable declarant in the defendant's position

would not have expected that his statement to the undercover agent would later be used against him. Id. at 228–229.

{¶ 35} In *United States v. Peneaux* (C.A.8, 2005), 432 F.3d 882, 896, the Eighth Circuit held a child's statements to a physician to be nontestimonial because the medical exam served to protect the child's health, and the interview lacked the " 'formality of * * * questioning' " and the "substantial 'government involvement' " seen in other cases. Id., quoting *United States v. Bordeaux* (C.A.8, 2005), 400 F.3d 548, 556. The *Peneaux* court further opined that "[w]here statements are made to a physician seeking to give medical aid in the form of diagnosis or treatment, they are presumptively nontestimonial." Id. Thus, federal courts that have considered this issue generally hold that a witness's reasonable beliefs or expectations determine the testimonial nature of a statement under *Crawford*.

{¶ 36} Given our review of the foregoing authority, we adopt the "objective witness" test in Ohio. For Confrontation Clause purposes, a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations. This test conforms to *Crawford* and is supported by both state and federal authority. This definition also prevents trampling on other portions of hearsay law that *Crawford* expressly states do not implicate the right to confront witnesses.

## Stahl's Propositions of Law

{¶ 37} Stahl presents two propositions of law for our review. Though they are related, we address these propositions separately.

{¶ 38} Proposition of Law I: "Statements made by an alleged rape victim to a forensic medical examiner are inherently testimonial in nature, whether or not the alleged victim expects the statements to be used in a subsequent prosecution, where the medical examination and interview are intended by prosecuting officials to serve an inherent 'investigative and prosecutorial' function."

{¶ 39} Stahl directs us to several facts in the record that he argues compel our determination that Mazurek's statements are testimonial. First, Stahl points to the DOVE unit's mission statement. Stahl argues that the mission statement expressly sets forth that one of the DOVE unit's primary purposes is to assist law enforcement. Stahl argues that "[t]his fact standing alone makes Ms. Mazurek's statements inherently 'testimonial.' " While Stahl correctly argues that the DOVE unit, like other emergency rooms, partly serves a prosecutorial function

by collecting evidence, this function is at best secondary to the DOVE unit's primary motivation, the care of its patients.

{¶ 40} In addition, Stahl fails to establish how this mission statement could possibly affect an objective witness's expectations regarding the purpose of the examination. Nothing in the record establishes that a reasonable witness in Mazurek's position would believe that the DOVE unit serves primarily a prosecutorial function or that the DOVE unit even has a mission statement. The mission statement therefore would not affect an objective witness's expectation when giving an account of an event. Under the facts of this case and the test we adopt today, the mission statement is irrelevant to the issue of Mazurek's reasonable expectation when giving the statement.

{¶ 41} Stahl also argues that the DOVE unit receives government reimbursement for each medico-legal exam it performs and acts as an agent of the prosecution.[1] Stahl, however, ignores Markowitz's unrebutted testimony that "[a]ny program, any emergency department, any Sexual Assault Forensic Examiners program that completes a medico-legal examination with a sexual assault evidence kit has the opportunity to be reimbursed." Thus, the DOVE unit does not differ in that respect from any other emergency room in Ohio that collects evidence with an approved kit. Again, Stahl fails to demonstrate that a reasonable witness in Mazurek's position would know about the reimbursement from the Attorney General. Without a witness's knowledge of that funding, there would be no effect on a witness's reasonable expectations regarding the purpose of the medical history, the incident history, or the physical examination.

{¶ 42} Similarly, Stahl points out that before bringing Mazurek in, Ellis asked Markowitz whether a rape-evidence-collection kit would be useful under the circumstances, arguing that that communication, like the Attorney General funding and the DOVE unit's mission statement, supports the notion that Mazurek's statements are testimonial under *Crawford* because they show the DOVE unit to be an agent of the prosecution. This argument suffers from the same flaw. The principal inquiry under *Crawford* focuses on the expectations of the declarant. Stahl does not argue, and the record does not support, that Mazurek knew or had reason to know of the communication between Ellis and Markowitz regarding the examination. Any such communication, without Mazurek's knowledge, could not be relevant in determining her reasonable expectations in submitting to the examination.

---

1. "Medico-legal exam," as described by Markowitz during the suppression hearing, refers to the entirety of the examination that DOVE routinely performs for trauma victims. This type of examination contains both a medical and a legal component, but parallels that of typical emergency rooms. See R.C. 2907.29.

{¶ 43} Finally, Stahl asserts that Markowitz's taking of evidence, which included swabbing for DNA with the help of ultraviolet light, taking pictures of Mazurek's mouth, and taking a napkin that Mazurek used after the incident, demonstrates the DOVE unit's prosecutorial purpose and renders Mazurek's statements testimonial. Emergency rooms routinely perform these procedures, and a witness in this situation could reasonably believe that the DOVE unit's medical examination, including the incident history statement, serves primarily a medical function.

{¶ 44} Proposition of Law II: "Statements made by an alleged rape victim to a forensic medical examiner are testimonial in nature when the alleged victim is informed and consents that any evidence or information gleaned from the examination will be used in the prosecution of the alleged rape; such statements are therefore inadmissible pursuant to *Crawford v. Washington* if the alleged victim is unavailable to testify at trial and the defense has not had an opportunity to cross-examine her regarding these statements."

{¶ 45} Stahl emphasizes that the language of the consent form, and specifically the phrase "information (including protected health information)," demonstrates that a reasonable person in Mazurek's position would have expected the police to use her statement in the prosecution of the crime. We disagree.

{¶ 46} As noted, Mazurek gave a statement to Officer Ellis at the police station prior to her appearance at the DOVE unit examination. That statement, given to police, served an inherently prosecutorial function, and it is reasonable to conclude that Mazurek made her statement to Ellis knowing that the police would use it in prosecution of the crime. Having already identified the perpetrator to police, Mazurek could reasonably have assumed that repeating the same information to a nurse or other medical professional served a separate and distinct medical purpose such as those in this case: determining whether the assailant had any communicable diseases and whether any specified course of treatment might therefore be appropriate, and for purposes of structuring a release plan to determine the likelihood of repeated activity in a residential or community setting. Where the victim of a criminal offense makes a statement to a police officer identifying the accused, and subsequently presents herself for a medical examination for purposes of gathering evidence of the crime and repeats the identification, the latter statement is not made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," because the declarant had previously made the identifying statement to the police. *Crawford*, 541 U.S. at 53, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 47} Moreover, the consent form in this case does not refer to statements made by a patient. Rather, it references "evidence, information (including

protected health information), clothing, colposcope photos, and photography documentation of injuries." This wording would naturally create a reasonable belief that the DOVE unit will release *physical* evidence to the police and any information resulting from the physical examination. But to a reasonable person, questioning by a nurse or other medical professional during an emergency-room examination would appear to serve a primarily health-care-related function. The police, to the contrary, routinely take statements for prosecution purposes, and Mazurek had already given a statement to Officer Ellis. Thus, Mazurek could have reasonably believed that although the examination conducted at the DOVE unit would result in scientific evidence being extracted for prosecution purposes, the statement would be used primarily for health-care purposes.

{¶ 48} Based upon the foregoing, we hold that Mazurek's statement to Markowitz was nontestimonial under the Sixth Amendment's Confrontation Clause, and we affirm the judgment of the Ninth District Court of Appeals.

Judgment affirmed.

RESNICK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

MOYER, C.J., PFEIFER and LANZINGER, JJ., dissent.

---

**LANZINGER, J., dissenting.**

{¶ 49} Although I agree that in determining whether a statement is testimonial pursuant to *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, we should focus on the declarant's expectation concerning the statement's use, I dissent from the conclusion that the statements at issue were nontestimonial. I would, therefore, reverse the judgment of the court of appeals.

{¶ 50} Certain facts are important to highlight. After reporting that she had been raped the previous day, Ann Mazurek was taken by Officer Amy Ellis to an Akron hospital's "Developing Options for Violent Emergencies" ("DOVE") unit, which specializes in health-care services for victims of sexual assault and domestic disturbances. Before she was examined, Mazurek signed a consent form that included the language "*I authorize the release of* evidence, *information* (including protected health information), clothing, colposcope photos, and photography documentation of injuries to a law enforcement agency *for use only in the investigation and prosecution of this crime.*" (Emphasis added.)

{¶ 51} The nurse practitioner, who was also the coordinator for victim services at the DOVE program, elicited detailed statements from Mazurek about the alleged crime and the identity of the perpetrator. Although not participating in the questioning, Ellis remained in the room throughout the interview. The nurse conducted a physical examination that included using a colposcope to photograph

Mazurek's mouth, collecting materials with a forensic evidence-collection kit, and obtaining nail scrapings, oral swabbings, and material retrieved with dental floss. She also used ultraviolet lighting to identify any bodily fluids still present and retrieved a napkin from Mazurek's coat pocket that Mazurek had used to wipe her face after the incident. The nurse asked whether Mazurek would be safe upon discharge and informed her about follow-up care. It does not appear that a doctor treated, or even saw, Mazurek in the DOVE unit.

{¶ 52} Unfortunately, Mazurek died of causes unrelated to this alleged crime, and she is not available to be cross-examined by Stahl at trial. The United States Supreme Court has held that the Sixth Amendment to the United States Constitution bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 53} The majority attempts to distinguish *Crawford* on the basis that this case does not involve police interrogation or *Miranda* warnings. *Miranda* warnings are irrelevant, since Mazurek was the alleged victim rather than an accused making the statements. In two recent domestic-violence cases elaborating on the meaning of "testimonial statements," the United States Supreme Court suggested that police may act through agents.[2] *Davis v. Washington* and *Hammon v. Indiana* (2006), —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224. In *Davis*, the relevant statements were made to a 911 operator and dealt with an ongoing emergency. In *Hammon*, the statements were made to police as part of an investigation and reported past events. The present reporting of an emergency was held to be nontestimonial; the reporting of past events was testimonial.

{¶ 54} Although the majority declines to expand the definition of "testimonial statements" to include statements made to a medical professional for purposes of receiving medical treatment or diagnosis, that is not what occurred. The primary purpose for the police to take Mazurek to the DOVE unit was for collection of evidence, not medical treatment.

{¶ 55} This case is properly analyzed under the "reasonable belief" formulation set forth in *Crawford*—that is, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. Under any objective standard, Mazurek reasonably knew

---

2. In *Davis*, the court noted that if 911 operators are not themselves law-enforcement officers, they may at least be agents of law enforcement when they interrogate 911 callers. Without deciding the point, the court considered the acts of the 911 operators to be acts of the police; whether and when statements made to someone other than law-enforcement personnel are testimonial was not decided. *Davis*, —— U.S. at ——, 126 S.Ct. at 2274, 165 L.Ed.2d at 224, fn. 2.

her statement could be used at Stahl's trial, and the trial court expressly found that she was aware of this fact. She authorized release of "information" to police for their prosecution of the crime. The state argues that "statements" were not specifically mentioned. As the consent form is written, however, the broad term used reasonably includes anything she tells about the event—"information." Officer Ellis's taking Mazurek to the DOVE unit after speaking with her and remaining during the signing of the consent form and the answers to questions about the event strengthen the conclusion that Mazurek knew her information would be used to prosecute.

{¶ 56} This is not the case of a crime victim's statement to a medical provider who is providing diagnosis or treatment. The forensic aspects of the DOVE unit are clear from the precise nature of the nurse's activities in collecting evidence. The other cases discussed by the majority relating to medical treatment, *State v. Vaught* (2004), 268 Neb. 316, 682 N.W.2d 284; *People v. Vigil* (Colo.2006), 127 P.3d 916; *State v. Bobadilla* (Minn.2006), 709 N.W.2d 243; and *United States v. Peneaux* (C.A.8, 2005), 432 F.3d 882, are distinguishable, as they all involved child assault victims. It would be reasonable to suppose that from a child's point of view, any statements were solely for medical diagnosis and treatment.

{¶ 57} In contrast, it is reasonable to suppose that Mazurek, an adult, expected that her statements, results of tests and examinations, and physical evidence collected—in short, the "information"—would be used in the prosecution of her case. She authorized this release to law enforcement for that purpose. In Mazurek's case, the nurse's primary purpose was forensic—no actual medical treatment was provided in the DOVE unit.

{¶ 58} Although the majority speculates about her state of mind, the record, which includes the consent form, leads me to conclude that Mazurek reasonably expected that her statement would be used during trial. Because her statement given at the DOVE unit was testimonial and its admission would violate the Confrontation Clause of the United States Constitution, I would reverse the judgment of the court of appeals.

MOYER, C.J., and PFEIFER, J., concur in the foregoing opinion.

———————

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Phillip D. Bogdanoff, Assistant Prosecuting Attorney, for appellee.

Brian M. Pierce, for appellant.