Pfeifer, J.,
dissenting.
*387 {¶ 88} Because the majority opinion is contrary to the Supreme Court’s holding in Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, conflicts with syllabus law from this court’s recent decision in State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, and limits a defendant’s ability to cross-examine the person who has produced a DNA report that essentially identifies him as the perpetrator, I dissent.
{¶ 89} DNA evidence has become the “smoking gun” in criminal trials. It can be a powerful tool for conviction or exoneration. DNA evidence is too central to prosecution to allow the routine introduction of such evidence as a business record. To do so would permit a records clerk to present the most important piece of evidence against a defendant without allowing that defendant to cross-examine the person responsible for preparing the report.
{¶ 90} The most important piece of evidence in this case is State’s Exhibit 56, the DNA report that identifies Esta Boyd’s blood on defendant Crager’s shirt. Steve Wiechman testified regarding the contents of that report and to its ultimate conclusion. Through Wiechman’s testimony, State’s Exhibit 56 was entered into evidence. But one inescapable fact finally emerges well into the majority opinion: Wiechman played no role in producing State’s Exhibit 56. The majority opinion cites Wiechman’s testimony that he “technically reviewed” the work of the DNA analyst, Jennifer Duvall, who did the actual testing on the blood samples in State’s Exhibit 56. The majority opinion describes that technical review, and states that “Wiechman stated that when he did the technical review, he did not know when the case would be tried or that he would be testifying.” Majority opinion at ¶ 19. The only problem is that Wiechman did not, in fact, technically review State’s Exhibit 56. That fact emerges farther into the majority opinion, though it is treated as unremarkable by the majority: “On cross-examination, Wiechman stated that he ‘actually technically reviewed the second [round of testing], but in preparation for court I reviewed, unofficially to prepare for testimony, I reviewed the entire case file.’ ” Majority opinion at ¶ 24. So, despite the majority’s citing Wiechman’s testimony that when he did his technical review, “he did not know when the case would be tried or that he would be testifying,” the truth is that Wiechman did not conduct the technical review of State’s Exhibit 56, but instead “reviewed” Duvall’s file regarding State’s Exhibit 56 for the sole purpose of preparing to testify.
{¶ 91} Though he had nothing to do with preparing the DNA report that became State’s Exhibit 56, Wiechman testified about its contents. His testimony regarding State’s Exhibit 56 was largely a recitation of Duvall’s report:
{¶ 92} “Q: And showing you what’s been marked as State’s Exhibit 56, can you identify that for us?
*388 {¶ 93} “A: Yes. This appears to be a copy of Jennifer Duvall’s report regarding this case.
{¶ 94} “Q: And does that contain the findings and conclusions that you have testified to thus far?
{¶ 95} “A: Yes, it does.
{¶ 96} “Q: And are those findings and conclusions determinations you would hold to a reasonable degree of scientific certainty?
{¶ 97} “A: Yes.”
{¶ 98} With this factual background established, the import of the majority’s holding becomes clearer. The majority holds that a DNA report can be admitted into evidence without the person who produced it having to testify about it. Under the majority’s ruling, a defendant’s rights under the Confrontation Clause are not affected when one DNA expert testifies as to the contents of another DNA expert’s DNA report, even when the nontestifying DNA expert’s report is admitted into evidence based upon the testifying witness’s testimony.
{¶ 99} In Crawford v. Washington, 541 U.S. at 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177, the Supreme Court of the United States stated that the Confrontation Clause bars “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.”
{¶ 100} The court in Crawford left “for another day any effort to spell out a comprehensive definition of ‘testimonial.’ ” Crawford, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. That day has yet to arrive, but the court in Crawford noted “various formulations” of the “core class” of testimonial statements, without adopting one as definitive: (1) ex parte in-court testimony or its equivalent, such as affidavits, custodial interrogations, prior testimony for which the defendant had no opportunity to cross-examine, or other pretrial statements that declarants would reasonably expect to be used in a prosecution, (2) extrajudicial statements in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, or (3) statements made under circumstances that would lead an objective witness to a reasonable belief that the statement could be used at a later trial. Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177.
{¶ 101} In State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, this court adopted as definitive the third of the formulations discussed by the Crawford court:
{¶ 102} “For Confrontation Clause purposes, a testimonial statement includes one made ‘under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.’ ” Id. at *389 paragraph one of the syllabus, quoting Crawford at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177.
{¶ 103} The majority tries to ignore Stahl and its first syllabus paragraph, adopting curious reasoning. The majority writes that “Stahl has no application here because Stahl involved the testimonial nature of actual oral ‘statements’ of a declarant and did not involve records of scientific tests or the business-records exception to the hearsay rule.” Majority opinion at ¶ 45. The majority acts as if nonoral statements are not “actual.” Are nonoral statements pretend? The Stahl syllabus is not self-limiting to “actual oral statements” — it applies to “statements.” Evid.R. 801(A) defines a “statement” as “(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.” The written assertions in State’s Exhibit 56 are most certainly statements, and Stahl most certainly applies to those statements. Stahl cannot be ignored in this case.
{¶ 104} The majority instead attempts to rely on State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, a case that predates Stahl. In Craig, this court considered the admissibility of an autopsy report prepared by a doctor who was no longer affiliated with the medical-examiner’s office. In Craig, Dr. Lisa Kohler, the Summit County medical examiner at the time of the trial, testified about a murder victim’s autopsy even though another doctor, who had retired prior to the trial, had actually performed the autopsy. Dr. Kohler testified that she had reviewed all the materials prepared in connection with the autopsy, but the defense objected to her testimony, arguing that she lacked firsthand knowledge of the autopsy. Id. at ¶ 73. Dr. Kohler provided her own expert testimony on the cause and time of death, and the trial court admitted the autopsy report into evidence.
{¶ 105} This court held in Craig that Kohler’s testimony and the admission of the autopsy report into evidence did not violate the defendant’s rights under the Confrontation Clause. The court adopted “the majority view under Crawford * * * that autopsy records are admissible as nontestimonial business records,” and held that “Dr. Kohler’s expert testimony about the autopsy findings, the test results, and her opinion about the cause of death did not violate Craig’s confrontation rights.” Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 88.
{¶ 106} We called the autopsy report in Craig “the ‘quintessential business record’ ” and found that “ ‘such records or statements are not testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are “by their nature” not prepared for litigation.’ ” Id. at ¶ 82, quoting People v. Durio (2005), 7 Misc.3d 729, 734, 794 N.Y.S.2d 863. Although *390 this court used the term “business records,” our determination that the autopsy report was nontestimonial was the key holding in Craig.
{¶ 107} The Confrontation Clause “applies to ‘witnesses’ against the accused.” (Emphasis added.) Crawford, 541 U.S. at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177. A coroner is concerned with how the decedent died rather than who may have killed him. Thus, the coroner is not a “witness” against a specific person when he or she prepares a report from an autopsy. A coroner’s report is not done at the behest of the prosecution in preparation for litigation; it is done pursuant to statute. See R.C. 313.131(B).
{¶ 108} That is in contrast with the DNA reports in this case. BCI is an arm of law enforcement, a statutorily created bureau within the office of the attorney general. R.C. 109.51. BCI is called upon by the General Assembly to “aid law enforcement officers in solving crimes and controlling criminal activity.” R.C. 109.52. The lab work in this case was performed at the behest of the prosecutor. Lab personnel interacted with the prosecutor’s office regarding how to proceed with the case. In performing the tests, lab personnel were attempting to prove the involvement of Crager. Among the items tested were Crager’s articles of clothing. The lab personnel objectively had to believe that their findings would be used at trial against a known defendant. That they were performing then-normal business activities in producing the reports does not make their reports nontestimonial. The reports were prepared in anticipation of litigation and are thus testimonial under Stahl.
{¶ 109} Whether evidence fits or does not fit into a hearsay exception such as the business-records exception is not relevant for Confrontation Clause purposes. The key question is whether the evidence is testimonial, that is, whether an objective witness would reasonably believe that a statement would be used at trial. A business record from a telephone company does not require an opportunity for cross-examination, because those records are not generated in order to be used in criminal prosecutions. They do not implicate the Confrontation Clause not because of the label “business records” but because of their character. To label something a business record when it catalogues the activity of an entity like BCI, whose business is analyzing evidence in pursuit of convictions, does not remove that record from the purview of the Confrontation Clause. “When a laboratory report is created for the purpose of prosecuting a criminal defendant, * * * it is testimonial.” State v. March (Mo.2007), 216 S.W.3d 663, 667. In March, the court found that the Confrontation Clause was violated when the analyst who identified a substance as cocaine in a drug case did not testify regarding his report. The prosecution instead called a records custodian to testify about the report. The court in State v. Caulfield (Minn.2006), 722 N.W.2d 304, similarly held that a drug report prepared by a bureau of criminal investiga *391 tions was testimonial. In Las Vegas v. Walsh (2005), 121 Nev. 899, 124 P.3d 203, the court held that an affidavit prepared for use at trial is testimonial. That case involved an affidavit from a nurse who drew blood from a defendant for a blood-alcohol test.
{¶ 110} Finding that DNA reports are testimonial in this case would not create an unnecessary practical hardship for the state in future cases. Although the reports admitted into evidence in this case contained the signature of Duvall alone, the practical reality of a DNA analysis is that it represents the work of more than one person. As Wiechman testified, the protocol in place at BCI required input from two analysts and a supervisor on every DNA report. One analyst performs the tests, a second reviews the results, and a supervisor reviews them again. Since more than one person is responsible for the production of a DNA report, more than one person can testify as to the contents of a report.
{¶ 111} In State v. Williams (2002), 253 Wis.2d 99, 644 N.W.2d 919, the Wisconsin Supreme Court considered the trial court’s admission of testimony regarding lab-test results indicating that a substance the defendant possessed was cocaine. The analyst who conducted the tests determining that the substance was cocaine did not testify, but a unit leader in the drug-identification section of the crime lab who had performed the peer review of those tests did testify. The court held that “the presence and availability for cross-examination of a highly qualified witness, who is familiar with the procedures at hand, supervises or reviews the work of the testing analyst, and renders her own expert opinion is sufficient to protect a defendant’s right to confrontation, despite the fact that the expert was not the person who performed the mechanics of the original tests.” Williams at 114, 644 N.W.2d 919.
{¶ 112} To satisfy the defendant’s confrontation rights, the testifying witness must be actively involved in the preparation of the report he is testifying about:
{¶ 113} “The right to confrontation is not satisfied when the government produces a witness who does nothing but summarize out-of-court statements and opinions made by others. [United, States v. Lawson (C.A.7, 1981), 653 F.2d 299, 302],
{¶ 114} “The critical point illustrated by Lawson is the distinction between an expert who forms an opinion based in part on the work of others and an expert who merely summarizes the work of others. In short, one expert cannot act as a mere conduit for the opinion of another.” Williams, 253 Wis.2d at 113, 644 N.W.2d 919.
{¶ 115} Here, Wiechman played no role in the development of the DNA analysis introduced as State’s Exhibit 56. He was not the lead analyst, he did not perform the technical review, and he did not perform a supervisory role. Had he *392 filled any of those roles for State’s Exhibit 56, he could have testified and not affected Crager’s rights under the Confrontation Clause.
{¶ 116} The majority states that had Duvall testified instead of Wiechman, her testimony would have been “very similar, if not identical, to Wiechman’s.” Certainly, Wiechman was very familiar with reports like State’s Exhibit 56, which are routinely produced by respected laboratories every day. But courts must take care not to assume reliability, and thus admissibility, based upon the source of the report: “Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.” Crawford, 541 U.S. at 62, 124 S.Ct. 1354, 158 L.Ed.2d 177. A focus on presumed reliability of reports is a remnant of Roberts. As the court said in Crawford:
{¶ 117} “To be sure, the Clause’s ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.” Id. at 61, 124 S.Ct. 1354, 158 L.Ed.2d 177.
{¶ 118} The lab report conclusively identified Boyd’s blood on Crager’s shirt. That report was admitted into evidence. That report was not Wiechman’s work, and the report does not become admissible simply because Wiechman read from it: “[W]e do not think it conceivable that the protections of the Confrontation Clause can readily be evaded by having a note-taking policeman recite the unsworn hearsay testimony of the declarant, instead of having the declarant sign a deposition.” (Emphasis sic.) Davis v. Washington (2006), 547 U.S. 813, 826-827, 126 S.Ct. 2266, 2276, 165 L.Ed.2d 224.
{¶ 119} The majority makes much of the California Supreme Court’s holding in People v. Geier (2007), 41 Cal.4th 555, 61 Cal.Rptr.3d 580, 161 P.3d 104. Geier differs from this case in important aspects. First, the California Supreme Court is not duty-bound to follow this court’s precedent, specifically this court’s recent syllabus holding in Stahl that “[f]or Confrontation Clause purposes, a testimonial statement includes one made ‘under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.’” Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at paragraph one of the syllabus, quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177.
{¶ 120} Second, Geier is the result of an entirely different factual scenario. In Geier, Dr. Cotton, the testifying witness, was a laboratory director for Cellmark, “a private, for-profit company that performs DNA testing in paternity and criminal cases.” Id. at 594, 61 Cal.Rptr.3d 580, 161 P.3d 104. Cotton did not conduct the DNA analysis herself, but was the supervisor of the person who *393 analyzed the DNA samples, and Cotton cosigned the DNA report as well as two follow-up letters to the law-enforcement agency involved in the case. Id. at 596, 61 Cal.Rptr.3d 580, 161 P.3d 104. Further, the Geier court relied on the fact that the match found between the defendant’s DNA and DNA taken from the victim— that is, the core accusation against the defendant — was the work of Cotton, not the analyst:
{¶ 121} “[T]o the extent [that the analyst’s] notes, forms and report merely recount the procedures she used to analyze the DNA samples, they are not themselves accusatory, as DNA analysis can lead to either incriminatory or exculpatory results. * * * [T]he accusatory opinions in this case — that defendant’s DNA matched that taken from the victim’s vagina and that such a result was very unlikely unless defendant was the donor — were reached and conveyed not through the nontestifying technician’s laboratory notes and report, but by the testifying witness, Dr. Cotton.” Id. at 607, 61 Cal.Rptr.3d 580, 161 P.3d 104.
{¶ 122} In contrast, the trial court here admitted the DNA report prepared by the nontestifying witness, Duvall, and that report contained the damning accusatory opinion that Boyd’s blood was on Crager’s shirt. This case is thus entirely factually distinguishable from Geier.
{¶ 123} This case also differs from another case cited by the majority, State v. Forte (2006), 360 N.C. 427, 629 S.E.2d 137, which presents a “cold case” scenario not present in this case. In Forte, DNA from victims of an unknown assailant was collected and analyzed in 1990 by a State Bureau of Investigation agent, D.J. Spittle. In 2001, the defendant’s DNA, recorded in a database during the 1990s, was matched with the DNA Spittle had analyzed in 1990. Spittle was unavailable to testify at the defendant’s trial, but his supervisor introduced Spittle’s reports into evidence. The Forte court found that the reports, containing the results of Spittle’s objective analysis of the evidence, along with routine chain of custody information, “[did] not bear witness against [the] defendant.” Forte, 360 N.C. at 435, 629 S.E.2d 137. The court found that “[although * * * the reports were prepared with the understanding that eventual use in court was possible or even probable, they were not prepared exclusively for trial and Agent Spittle had no interest in the outcome of any trial in which the records might be used.” Id. Here, unlike in Forte, the DNA report was created for the purpose of prosecuting a known defendant.
{¶ 124} Since Wiechman was involved in no way in the preparation of State’s Exhibit 56, and since neither the actual preparer, nor the technical reviewer, nor the supervisor testified, Crager was not able to conduct a meaningful cross-examination of a person responsible for the preparation of the report that was *394 ultimately admitted into evidence. Thus, Crager’s rights under the Confrontation Clause were violated.
Jim Slagle, Marion County Prosecuting Attorney, for appellant.
Collins & Lowther, L.P.A., and Kevin P. Collins, for appellee.
Marc Dann, Attorney General, Elise Porter, Acting State Solicitor, and Stephen P. Carney, Deputy Solicitor, urging reversal for amicus curiae Attorney General of Ohio.
William F. Schenck and Elizabeth A. Ellis, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.
Eric J. Allen, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.
Moyer, C.J., concurs in the foregoing opinion.