[Cite as *State v. Strong*, 2011-Ohio-4947.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | APPEAL NOS. C-100484 |
| | | C-100486 |
| Plaintiff-Appellee, | : | |
| | | TRIAL NO. B-0900625 |
| vs. | : | |
| | | |
| JEFFREY STRONG,[1] | : | *O P I N I O N.* |
| | | |
| Defendant-Appellant. | : | |
| | | |
| | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 30, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones,* for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

---

[1] The indictment listed the defendant-appellant's name as "Jeff" rather than "Jeffrey."

Per Curiam.

{¶1}     Defendant-appellant Jeffrey Strong appeals the judgment of the Hamilton County Court of Common Pleas convicting him on two counts of rape in violation of R.C. 2907.02(A)(2) and one count of kidnapping in violation of R.C. 2905.01(A)(4).  For the reasons that follow, we affirm Strong's convictions.

## I.  Background Facts

{¶2}     At about 3:40 a.m. on January 27, 2010, Caroline Akinyi reluctantly allowed her neighbor, Strong, to enter her apartment so that Strong, who claimed to be locked out of his house, could contact a family member.  Once inside, Strong grabbed her by her throat and pushed her into her bedroom.  When Akinyi screamed, Strong warned her that if she screamed again, he would kill her.

{¶3}     Akinyi tried to persuade Strong to leave her alone by reading Bible verses to him and listening to Gospel music.  But Strong ordered her to remove all of her clothes.  While threatening her with a knife, he told her that if she did not cooperate, he would take her to his gang members waiting outside and they would kill her.

{¶4}     Akinyi reluctantly complied, and Strong ordered her to circle around naked while he watched her.  Strong then removed his clothes, but he allowed Akinyi to warm herself with a blanket.  Akinyi tried to escape from her apartment, but Strong grabbed her before she made it to the door.  Akinyi fought him off temporarily and held up a chair to throw at Strong.  Strong then told her that he would leave after dressing and ordered Akinyi to lock herself in the bathroom.  Akinyi grabbed Strong's knife and locked herself in the bathroom.

{¶5}     Instead of leaving, Strong unlocked the bathroom door with a pen and entered the bathroom.  After wrangling the knife away from Akinyi, Strong beat Akinyi and pushed her to the bedroom, where he continued to punch her in the face and pull out her hair.

2

{¶6} Strong ordered Akinyi to the bed. There he licked her breast and attempted to fully penetrate her vagina with his penis. Although Strong was not completely successful, his penis pushed past her labia. Additionally, Strong "played on her private parts" for a while with his fingers and inserted his fingers past her labia.

{¶7} Although the sexual activity took place at around 7:00 a.m., Strong kept Akinyi in her apartment with him for several more hours. During this time, Akinyi was afraid to attempt an escape. Strong eventually left after Akinyi promised him that she would not tell anyone about the rapes or how she had received her injuries. Strong told her that he would return that afternoon.

{¶8} After Strong left, Akinyi immediately contacted a friend, who contacted the police. Cincinnati Police Officer Thomas Haas responded to Akinyi's apartment and described her as fearful, crying, and nervous. Akinyi told the officer that she had been raped and held against her will by a neighbor named "Jeff." Akinyi identified Strong's residence on her way to the Personal Crimes Office with Officer Haas.

{¶9} Akinyi did not know if Strong had ejaculated during the attack, but she believed that she had observed some fluid on her bed sheet. The police, however, were unable to locate any evidence of semen on her bed.

{¶10} Cincinnati Police Detective Jeff Smallwood from the Personal Crimes Unit investigated the case. He interviewed Akinyi and photographed her injuries, which included significant swelling on her face and a bloody lip. After the interview, Akinyi was taken to University Hospital where she was examined by sexual assault nurse examiner Sharon McKenzie. McKenzie also observed and photographed Akinyi's facial injuries. In addition, she noted substantial redness to Akinyi's posterior fourchette, an area of the vagina beyond the labia. McKenzie

collected swabs from Akinyi's mouth, vagina, rectum, and breasts, and placed them in a rape kit for analysis.

{¶11}     Detective Smallwood interviewed Strong later that day.  He began the interview, which was recorded, by providing Strong the *Miranda*[2] warnings. Strong acknowledged the receipt of these warnings both orally and in writing.  Before telling Detective Smallwood that he did not want to talk to him, Strong stated that he had not seen Akinyi over the night. After the interview, Detective Smallwood swabbed Strong's mouth, hands, and genitalia.

{¶12}     Hamilton County Coroner's Office serologist Tracey Sundermeier analyzed the swabs taken from Strong and the contents of Akinyi's rape kit. Sundermeier concluded that the saliva found on Akinyi's breast belonged to Strong and that neither Strong nor Akinyi could be excluded from the DNA mixture she had obtained from Strong's penile swabs.  She found one sperm cell on the swab taken from inside Akinyi's mouth, but she could not detect any male DNA.  And she found no sperm cells on the vaginal or rectal swabs taken from Akinyi.

{¶13}     The grand jury indicted Strong on rape and kidnapping charges. Before trial, defense counsel requested a competency evaluation for Strong. Subsequently, examiners from the Court Clinic Forensic Services evaluated Strong three times, and the court found him competent to stand trial three times.

{¶14}     Strong moved to suppress statements made during the taped interview with Detective Smallwood, arguing that he had invoked his right to remain silent early in the interview.  The trial court granted the motion in part.  But the court found that Strong had not invoked his right to remain silent until about halfway through the interview.

{¶15}     At trial, Akinyi recounted the events that had occurred in her apartment, testifying that Strong had held her in her apartment for over seven hours

---

[2] *Arizona v. Miranda* (1966), 384 U.S. 436, 86 S.Ct. 1602.

4

while he threatened, beat, and raped her. She did not know if Strong had ejaculated, and she denied that she had performed oral sex on Strong.

{¶16} Strong did not testify at trial. The court found Strong guilty on all counts and imposed consecutive five-year terms of incarceration for each offense, resulting in an aggregate prison term of 15 years. The court also classified Strong as a Tier III sex offender. This appeal followed.

## II. Competency to Stand Trial

{¶17} In his seventh assignment of error, which we address first, Strong argues that the trial court erred by finding him competent to stand trial.

{¶18} A defendant is presumed competent to stand trial until it is shown by a preponderance of evidence that, because of his present mental condition, he is incapable of understanding the nature and objective of the proceedings against him or assisting in his defense.[3] A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence to support the trial court's determination.[4]

{¶19} In this case, defense counsel filed a suggestion of incompetency based on his belief that Strong at times did not understand what he told him. Strong was evaluated three times at the Court Clinic. Psychologist Charles Lee evaluated Strong in April 2009 and updated that evaluation in December 2009. Psychiatrist Gail Hellmann evaluated Strong in July 2009. After interviewing and testing Strong and reviewing ample collateral information, both examiners found that Strong was malingering symptoms related to mental illness and mental retardation, and both considered Strong competent to stand trial.

{¶20} Twice the trial court relied on the stipulated reports of the examiners in finding Strong competent. The court found Strong competent a third

---

[3] R.C. 2945.37(G).
[4] *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶46.

time after an evidentiary hearing held on December 22, 2009, at which Dr. Lee testified. At the hearing, Dr. Lee attributed Strong's failure to cooperate with his attorney to be the result of Strong's own volition, and not the result of any mental illness or brain damage.

{¶21}    Strong argues that he met his burden of showing incompetency, citing his history, which included a diagnosis of schizophrenia and a low IQ, and his failure to cooperate with defense counsel. He essentially attacks the opinions of Dr. Hellmann and Dr. Lee.

{¶22}    Our review demonstrates that the examiners were qualified experts and that they had appropriately supported their findings and opinions. And other than counsel's representation that Strong was not cooperating, the record from the trial court proceedings does not reflect that Strong exhibited behavior suggesting incompetency.

{¶23}    Reliable and credible evidence supports the trial court's findings of competency. The assignment of error is not demonstrated by the record, and we overrule it.

### III. Invocation of Right to End Questioning

{¶24}    Next we address Strong's sixth assignment of error, which challenges the trial court's partial denial of his motion to suppress. Strong maintains that he invoked his right to end questioning when he told Detective Smallwood that "[t]hat's all I can let you know right there * * *." This assignment of error presents the narrow question of when Strong invoked his right to cut off questioning after a valid waiver of the right to remain silent.

{¶25}    The United States Supreme Court recently held in *Berghuis v. Thompkins*[5] that, in the context of invoking the *Miranda* right to remain silent, if an accused makes a statement concerning the right to remain silent that is ambiguous

---

[5] (2010), ___ U.S. ___, 130 S.Ct. 2250.

6

or equivocal, or if he says nothing at all, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his *Miranda* rights.[6] The applicable legal standard requires an unambiguous and unequivocal invocation of the right to remain silent, similar to the standard required for the invocation of the right to counsel.[7] This involves an objective inquiry.[8]

{¶26} As the facts are not in dispute, the issue is whether Strong's statement satisfied the applicable legal standard, an issue we review de novo.[9]

{¶27} To address the assignment of error, we quote the following exchange that took place between Detective Smallwood and Strong at the custodial interview:

{¶28} "Smallwood: Okay. Do you know why we asked to talk with you?

{¶29} "Strong: Uh-huh.

{¶30} "Smallwood: No. I guess can you kind of—just kind of may be fill me in on what went on last night and how you spent your evening yesterday kind of up until this morning?

{¶31} "Strong: I was over working in the basement yesterday.

{¶32} "Smallwood: Okay, All right.

{¶33} "Strong: And I cut my hand a few times, little scrape things, little scrapes and stuff.

{¶34} "Smallwood: Okay. So you were working in the basement yesterday?

{¶35} "Strong: Yes.

{¶36} "* * *

{¶37} "Smallwood: So what time did you finish up with that?

---

[6] *Berghuis*, supra, 130 S.Ct. at 2260 (internal quotations and citations omitted). See, also, *State v. Murphy*, 91 Ohio St.3d 516, 520, 2001-Ohio-112, 747 N.E.2d 765.
[7] Id. See, also, *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶96-98.
[8] See *Berghuis*, supra, at 2260.
[9] *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8.

{¶38}     "Strong:  Probably about 10.

{¶39}     "* * *

{¶40}     "Smallwood:  A.M. or P.M.?

{¶41}     "Strong:  P.M.

{¶42}     "Smallwood:  P.M., so around 10:00 p.m. last night?

{¶43}     "Strong:  Yes.  You never told me what I'm here for.

{¶44}     "Smallwood:  Well, there is a certain order in which we do things.  * * * Right now I'm just trying to get a time line for it—from you and that's all.  Okay.  We'll kind of go from there.  Okay.

{¶45}     "Strong:  Okay.  That's all I can let you know right there as far as yesterday."

{¶46}     According to Strong, he unambiguously and unequivocally invoked his right to end questioning at this point because he told Detective Smallwood that "that's all I can let you know right there * * *."

{¶47}     But a suspect's alleged invocation must be examined in context, not in isolation.[10]   Strong's full comment reads, "[o]kay, that's all I can let you know right there as far as yesterday."  This comment might well be interpreted to mean that Strong had gone to sleep at 10 p.m. and, therefore, he had no more information to provide about "yesterday," or that Strong was fishing for information from Detective Smallwood regarding the specific allegations.

{¶48}     These interpretations demonstrate that Strong's comment was not an unequivocal and unambiguous invocation of his right to remain silent.  We therefore overrule Strong's seventh assignment of error.

### IV.  Sufficiency- and Weight-of-the-Evidence Claims

---

[10] *Murphy*, supra, at 520-521.

{¶49}     In his first three assignments of error, which we address next, Strong contends that his convictions for rape and kidnapping were not supported by sufficient evidence and were against the manifest weight of the evidence.

### A. Rape

{¶50}     Strong was convicted on two counts of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Strong argues that the state failed to produce sufficient evidence of vaginal penetration to prove the element of "sexual conduct."

{¶51}     As set forth in R.C. 2907.01(A), "sexual conduct" is defined, in relevant part, as "vaginal intercourse between a male and female * * * and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal * * * intercourse."[11]

{¶52}     By amendment to R.C. 2907.01(A), effective Aug. 3, 2006, the General Assembly modified the definition of "sexual conduct" by substituting the word "opening" for the word "cavity" after the phrase "vaginal or anal."[12]

{¶53}     The term "intercourse" is defined as " 'the sexual joining of two individuals.' "[13] Thus, when the phrases "vaginal intercourse" and "vaginal opening" are read together, it is apparent that sexual conduct occurs when there is penetration of the vaginal opening by a penis or other body part.

{¶54}     Even before the amendment to the definition of "sexual conduct," this court, as well as other appellate courts, had held that penetration of the labia was sufficient to prove penetration of the vagina for purposes of satisfying the element of

---

[11] R.C. 2907.01(A).
[12] Am.Sub.H.B. No. 95.  See, also, Section 6, Am.Sub.S.B. No. 10.
[13] *State v. Wells*, 91 Ohio St.3d 32, 34, 2001-Ohio-3, 740 N.E.2d 1097, citing Webster's New World Dictionary (3 Ed.1991) 703.

sexual conduct as defined in R.C. 2907.01(A).[14]  As noted by one court, the labia is the anterior of the female genital organ.[15]

{¶55}     In this case, Akinyi testified that, despite her efforts to prevent full penetration, Strong had been able to push his penis and fingers "past her labia." McKenzie testified that she had observed an injury to the posterior fourchette of Akinyi's vagina, an area past her labia.  This testimony, if believed, was sufficient to establish the element of sexual conduct, as defined in R.C. 2907.01(A).

{¶56}     Strong also questions the evidence on the element of "force or threat of force."  But Akinyi testified that Strong had beaten her, had threatened her with a knife, and had told her that if she did not cooperate, then he would take her to his gang waiting outside and they would kill her.  Detective Smallwood and McKenzie both photographed Akinyi's injuries and those photographs were introduced at trial.

{¶57}     After reviewing the evidence in the light most favorable to the state, as we are required to do, we hold that the record contains sufficient evidence of forcible rape based on vaginal intercourse and digital penetration of the vaginal opening.[16]

### B.  Kidnapping

{¶58}     Strong contends that the evidence was insufficient to prove the offense of kidnapping, as set forth in R.C. 2905.01(A)(4).  This offense involves the

---

[14] See, e.g., *State v. Roberts*, 1st Dist. No. C-040547, 2005-Ohio-6391, ¶62 ("[E]ven if the victim's courtroom demonstration showed only the penetration of the victim's labia * * * the jury reasonably could have inferred that vaginal penetration had occurred."); *State v. Schuster*, 6th Dist. No. L-05-1365, 2007-Ohio-3463, ¶67 (upholding jury instruction defining "sexual conduct" as including the "penetration of the external female genitalia known as the vulva or the labia"); *State v. Ulis* (July 23, 1994), 6th Dist. No. L-93-247 ("[E]ntry of the vulva sufficient to constitute penetration within the meaning of R.C. 2907.01(A)."); *State v. Harder* (Oct. 9, 1984), 3rd Dist. No. 9-83-26, (" '[E]ntry of the anterior of the female genital organ, known as the vulva or labia, is sufficient penetration to constitute rape although the vagina is intact and not penetrated in the least * * *.' "), quoted in *State v. Carpenter* (1989), 60 Ohio App.3d 104, 105, 573 N.E.2d 1206.
[15] *Harder*, supra, quoting Annotation, What Constitutes Penetration in Prosecution for Rape or Statutory Rape (1977), 76 A.L.R.3d 163, 171.
[16] *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781; *State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104, 651 N.E.2d 965.

use of force, threat, or deception to move or restrain a victim for the purpose of nonconsensual sexual activity with the victim. In support of his argument, Strong relies on Akinyi's testimony that, after the sexual activity occurred, she had had the opportunity to leave.

{¶59}     Strong's argument fails to consider Akinyi's full statement in which she explained that she had not tried to escape after the rape because the rape had already occurred and because she had believed that her leaving would upset Strong, who had become angry and had beaten her after she had first tried to escape. Further, Strong ignores Akinyi's testimony that he had physically restrained her before and during the nonconsensual sexual activity.

{¶60}     In light of this evidence, we conclude that the state presented sufficient evidence to support Strong's kidnapping conviction.[17]

### C. Weight of the Evidence

{¶61}     Likewise, we cannot say that the convictions for rape and kidnapping were against the manifest weight of the evidence.[18] Strong contends that Akinyi's testimony was not credible and that the evidence established only that she was embarrassed about consensually performing oral sex so she made up a story about the forcible rapes and kidnapping.

{¶62}     We disagree. To explain why a sperm cell was found in Akinyi's mouth, the state contended that either Akinyi or Strong had touched Strong's semen and then touched Akinyi's mouth. The serologist explained at trial that there were very few sperm cells in the oral sample taken from Akinyi's mouth. More importantly, Akinyi's documented vaginal and facial injuries provided strong corroboration for her testimony.

---

[17] Id.
[18] See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

**{¶63}** The weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact.[19] After reviewing the record, we cannot say that in convicting Strong, the trier of fact lost its way and created a manifest miscarriage of justice.[20] Accordingly, we overrule the first, second, and third assignments of error.

### V. Multiple-Counts Statute

**{¶64}** In his fifth assignment of error, Strong contends that the two rape offenses and the kidnapping offense were allied offenses of similar import, committed neither separately nor with a separate animus as to each and, therefore, that sentencing him for more than one of the three offenses violated R.C. 2941.25, Ohio's multiple-count statute.

**{¶65}** Under R.C. 2941.25, a trial court, in a single proceeding, may convict and sentence a defendant for two or more offenses " ' having as their genesis the same criminal conduct or transaction,' " if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense.[21]

**{¶66}** In *State v. Johnson*,[22] the Ohio Supreme Court abandoned the abstract-elements test of *State v. Rance*[23] and held in the syllabus that "when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."[24] All seven justices concurred in the syllabus overruling *Rance*.

---

[19] *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[20] *Thompkins*, supra, at 387.
[21] *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892, quoting *State v. Moss* (1982), 69 Ohio St.2d 515, 519, 433 N.E.2d 181; see, also, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶51; *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816.
[22] Supra.
[23] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[24] *State v. Johnson*, supra, syllabus, quoted in *State v. Mackey*, 1st Dist. Nos. C-100311, C-100312, C-100313, and C-100314, 2011-Ohio-2529, ¶16.

{¶67} While all seven justices uniformly agreed that the conduct of the accused must be considered in determining whether two or more offenses are allied offenses of similar import under R.C. 2941.25(A), the justices could not reach a majority opinion with regard to the analysis that courts should use.[25] "Therefore, when, as here, there has been a trial, we look to the evidence adduced at trial, and if that evidence reveals that the state relied upon the 'same conduct' to prove the two offenses, and that the offenses were committed neither separately nor with a separate animus to each, then the defendant is afforded the protections of R.C. 2941.25, and the trial court errs by imposing separate sentences for the offenses."[26]

### A. Rape Offenses

{¶68} With respect to the two rape offenses, we first note that both counts alleged violations of the same statutory subsection, R.C. 2907.02(A)(2), which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." One count alleged that Strong forced Akinyi to submit to vaginal intercourse, and the other alleged that Strong forced her to submit to the penetration of the same orifice, but with his fingers.

{¶69} Strong was found guilty of rape by vaginal intercourse upon Akinyi's testimony that, at around 7 a.m., Strong had ordered her to her bed and had tried to fully penetrate her vagina with his penis. She had successfully avoided full penetration by shifting around, but she claimed that his penis had penetrated past her labia.

{¶70} Strong was found guilty of rape by digital penetration based on conduct that occurred during the same sexual encounter, but on acts involving digital penetration. Akinyi testified that Strong's fingers had played on her private parts for "a

---

[25] Id. at ¶47-52 (Brown, C.J.); id. at ¶59-71 (O'Connor, J.); id. at ¶72-83 (O'Donnell, J.).
[26] *Mackey*, supra, at ¶16, citing R.C. 2941.25(A); R.C. 2941.25(B); *Johnson*, supra, at ¶56.

little bit," and that his fingers had penetrated her labia. There was no evidence that the digital penetration was merely incidental to the vaginal intercourse.

{¶71}     The evidence demonstrated that the vaginal intercourse and the digital penetration involved distinct, different kinds of sexual activity.[27]     Thus, they were separate offenses for merger purposes, even though they were committed in the course of the same sexual encounter.[28]  Because these offenses involved different, distinct types of sexual activity, they each constituted a separate crime, and their merger is not required by R.C. 2941.25(B).

### B.  Rape and Kidnapping Offenses

{¶72}     Strong's kidnapping offense stems from a violation of R.C. 2905.01(A)(4), which provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will."

{¶73}     The state concedes that it relied upon the conduct of the forcible rape offenses to prove the kidnapping offense.  Thus, in this case, the kidnapping offense and the rape offenses were allied offenses of similar import.

{¶74}     The state argues, however, that the evidence demonstrates that Strong possessed an animus separate from the rape offenses in carrying out the kidnapping offense.

---

[27]  See R.C. 2907.01(A)("Sexual conduct means vaginal intercourse * * * and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."); *State v. Nicholas* (1993), 66 Ohio St.3d 431, 435, 613 N.E.2d 225, (pre-*Johnson* case holding that vaginal intercourse and penetration of the vaginal cavity by any body part or object can be allied offenses of similar import but are separate crimes involving distinct sexual activity when the body part is a finger.)

[28]  See *State v. Parker*, 2nd Dist. No. 10CA0074, 2011-Ohio-1418, ¶112 (following the court's prior holding that "allied offenses involving distinct, different kinds of sexual activity each constitute a separate crime and do not require merger, even when they are committed in the course of the same encounter.")

{¶75}    Because the offense of kidnapping is implicit in many offenses, Ohio has delineated specific guidelines to determine whether the restraint or movement of the victim is "penologically significant"[29] apart from another offense, including rape.

{¶76}    To that end, the Ohio Supreme Court in *State v. Logan*[30] held that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions."[31]  Further, "[w]here the asportation or restraint of the victim subjects the victim to a substantial increase in the risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."[32]

{¶77}    Looking at the facts of this case, Strong's prolonged restraint of Akinyi signifies a separate animus and supports a conviction for kidnapping apart from the commission of the underlying rape offense.  Not only was the restraint prolonged—over seven hours, but Strong did not free Akinyi from his restraint until several hours after the rapes.  During this extended detention, Strong beat Akinyi, he threatened her with a knife, and he made her promise that she would not tell anyone about his attack, all subjecting her to a substantial increase in the risk of harm separate and apart from that involved in the rapes.   Further, before leaving her apartment, he threatened to return that afternoon. In light of these circumstances,

---

[29] *State v. Logan* (1979), 60 Ohio St.2d 126, 135, 397 N.E.2d 1345.
[30] Id.
[31] Id. at syllabus.
[32] Id.

we conclude that there exists a separate animus as to the kidnapping and rape offenses to support separate convictions.[33]

{¶78}     Where the record shows that the state relied upon separate conduct to support each of the rape offense violations, and that Strong had a separate animus for the kidnapping offense violation, Strong was not entitled to the protections of the multiple-count statute.  Accordingly, we overrule the fifth assignment of error.

### *VI. Excessive Sentence*

{¶79}     In his fourth assignment of error, Strong argues that his sentence of fifteen years' imprisonment was excessive and an abuse of discretion for that reason.

{¶80}   We conduct a two-part review of Strong's sentence of imprisonment.[34] First, we must determine whether the sentence was contrary to law.[35]  Then, if the sentence was not contrary to law, we must review it to determine whether the trial court abused its discretion in imposing it.[36]

{¶81}   Here the sentences imposed were not contrary to law.  The terms of imprisonment imposed for the rape and kidnapping offenses, first-degree felonies, were within the range provided by statute.[37]

{¶82}   And although the court did not specifically state that it had considered R.C. 2929.11 and 2929.12, we may presume that it did.[38]  Having presided over Strong's trial, the trial court was well acquainted with the facts surrounding the crimes.  The court was also aware of Strong's prior criminal record, including a conviction for domestic violence.  On the state of this record, we cannot say that the

---

[33] R.C. 2941.25(B); *Logan*, supra.
[34] See *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.
[35]  See id. at ¶14.
[36]  See id. at ¶17.
[37]  R.C. 2929.14(A)(1); see, also, *Kalish*, supra, at ¶11-12.
[38]  See *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶31.

trial court acted unreasonably, arbitrarily, or unconscionably in imposing the sentences.

{¶83}    After our review of Strong's sentences for these offenses, we conclude that the fourth assignment of error is meritless, and we overrule it.

### VII.Conclusion

{¶84}      The judgment of the trial court is affirmed.

Judgment affirmed.

**SUNDERMANN, P.J., HENDON** and **CUNNINGHAM, JJ.**

Please Note:

The court has recorded its own entry on the date of the release of this decision.